DANIEL H. BRIAR *et al.*

*v.*

COMMISSIONERS OF JOB'S CREEK DRAINAGE DISTRICT.

*Opinion filed April 17, 1900.*

1. APPEALS AND ERRORS—*when objections come too late on appeal.* Parties who appear before the county court and file objections to the merits of a petition to form a drainage district, cannot, on appeal, object that proper notice of the various proceedings had not been given or that the affidavit to the petition is insufficient.

2. SAME—*one assigning error by leave of court is bound by case made by appellants.* One who has not appealed, but is permitted, by leave of court, to assign errors on appeal, cannot have the judgment reversed on questions appellants could not raise upon the record.

3. DRAINAGE—*right of commissioners to make new outlet for natural stream.* As against land owners who have been compensated for the taking of their land, commissioners of a drainage district organized under the act of 1879, for the construction of ditches, drains and levees, have authority, under section 57 of that act as amended in 1889, to construct a channel through such land for the purpose of diverting a natural water-course to a new outlet, there being no question raised by the owners of land through which the natural stream ran before being diverted.

APPEAL from the County Court of Cass county; the Hon. J. F. ROBINSON, Judge, presiding.

LYMAN LACEY, Sr. & SON, and HENRY PHILLIPS, for appellants.

J. N. GRIDLEY, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

A petition was filed in the county court of Cass county for the formation of Job's creek drainage district. The petitioners allege that they are of lawful age, and are a majority of the owners and own more than one-third of all the lands in the proposed district; that said lands are annually damaged by the overflow of Job's creek, and can not be drained without digging a new ditch to carry off the water of said creek, and that said ditch is neces-

185—17

sary to reclaim and drain said lands. The lands were described, the boundaries of the district given and the location of the proposed ditch was stated. Affidavit was attached and notice by publication and posting given. Commissioners were appointed, who reported against the plan locating the ditch as proposed in the petition, but located it upon a line one-fourth of a mile further west, within the district. Their report was approved and the district organized and an assessment of damages and benefits made. The appellants, Daniel H. Briar and Margaret Briar, subject to a life estate of their mother, Nancy A. Briar, own each an undivided half of the tract of land through which the new ditch was constructed. Nancy A. Briar did not appeal, but was given leave to join appellants in the assignments of error in this court. The two appellants appeared in the court below at the time fixed for the hearing for the confirmation of the report and filed in writing their objection to the confirmation of the report, and asked that it be not approved, or that it be materially modified so as not to run the proposed drain over the land of the objectors, as proposed by the report.

These appellants now object that proper notices had not been given of the various proceedings, as required by the statute; and that the affidavit to the petition is not sufficient to show that the petition was signed by a majority of the land owners, and that they owned one-third of the lands in the district as finally organized. If appellants desired to raise these questions they should have raised them below, and it is too late to raise them here for the first time, after appearing in the court below and raising objections there which were confined to the merits of the cause. By their objections there, and the hearing on them, they sought to have the report rejected, or at least modified so as to prevent the location of the ditch upon their lands. In this they were defeated, the report was approved, the district was declared duly organized, and afterward the damages and benefits were

assessed as the statute provided. Appellants were allowed as damages, in excess of benefits, the total sum of $3200.40 to tracts through which the ditch was located. The evidence shows that amount was sufficient to cover all the damages which the land will sustain. Indeed, we do not understand that counsel for the appellants asked for a reversal on the ground that the damages were insufficient.

It is, however, insisted, that if the two appellants, Daniel and Margaret Briar, cannot question here for the first time the sufficiency of the notices given, and of the proof that the petitioners were a majority of the land owners and owned one-third of the land in the district, then Nancy A. Briar, who did not appear below nor join in the appeal but whom this court allowed to join with the appellants in the assignments of error as one of the owners of the land in controversy, not having waived any error below, may avail herself of them here. We do not so understand the effect of the leave granted to Nancy A. Briar. By permission of the court she, as one of the owners of the land, was permitted to come in and assign errors, but in doing so she was bound by the case as made by the appellants. She made their appeal her own. She could not be permitted, without appealing or bringing error herself, to come into their appeal and have the judgment reversed on questions which they could not raise.

The question, however, most seriously insisted upon is, that the law confers no power on drainage districts, or their commissioners, to change from its natural channel a natural water-course, and cause it to run in a new artificial channel to be cut through appellants' lands and to empty its waters at a new outlet. It appears from the record that Job's creek is a natural water-course coming from the hills adjacent to the bottom lands sought to be protected from its overflow waters, and flows through such lands by a circuitous route in a north-westerly di-

rection and empties into the Sangamon river; that it was impracticable, because of its length, the character of the outlet and the natural obstructions in the channel, to furnish the required protection to the lands by deepening the natural channel, but by changing the channel from the place where the creek entered upon these lands, into a new channel to be opened almost directly north to the river, the distance would be shortened one-third, the natural obstructions would be avoided, a better outlet obtained and the expense reduced. It is obvious, then, that the commissioners were justified, under the order of the court, in adopting this plan unless it was without authority of law. The work proposed also involved the construction of levees on each side of the ditch as a protection in times of extreme high water.

The district was organized under the act for the construction of drains, ditches and levees, approved and in force May 29, 1879. Section 57 of that act (Hurd's Stat. 1889, p. 557,) provides: "The word 'ditch,' when used in this act, shall be held to include any drain or water-course, and the petition for any drainage district shall be held to mean and include any side lateral spur or branch ditch drain open, covered or tiled, or any natural water-course into which such drains or ditches may enter for the purpose of outlet, whether such water-course is situated in or outside of the district. And to secure complete drainage of the lands within any drainage district, the commissioners are hereby vested with full power to widen, straighten, deepen, or enlarge any such water-course, or remove any driftwood, or rubbish therefrom, whether such water-course is situated in, outside of, or below any drainage district; and when it is necessary to straighten such natural water-course by the cutting of a new channel upon other lands, the value of such lands to be occupied by such new channel, and damages, if any, made by such work, may be ascertained and paid in the manner that is now or may hereafter be provided

by any law providing for the exercise of the right of eminent domain in force in this State."

This stream was straightened from the place where it entered upon these lands to its confluence with the Sangamon, and a new channel was authorized to be cut, all of which was, we think, authorized by the statute,— at least so far as these land owners are concerned. There is here no question raised by owners of land through which the natural stream ran, as to the right of the commissioners to divert the waters of the creek from their natural bed, but only as to the right to carry them through the district in a new channel to be cut through appellants' lands, for which compensation is made.

Finding no error the judgment will be affirmed.

*Judgment affirmed.*